**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| **MICHELLE W. VULLINGS,** | : | **Civil Action No.:** |
| **individually and on behalf of all others** | : | |
| **similarly situated,** | : | |
|     **Plaintiffs** | : | |
| | : | |
|     **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **BRYANT HEATING AND COOLING** | : | |
| **SYSTEMS, CARRIER CORPORATION,** | : | |
| **and UNITED TECHNOLOGIES** | : | |
| **CORPORATION** | : | **CLASS ACTION** |
|     **Defendants** | : | |

---

**CLASS ACTION COMPLAINT**

Plaintiff, Michelle W. Vullings, brings this action against Defendants, Bryant Heating and Cooling Systems (hereinafter referred to as "Bryant"), Carrier Corporation (hereinafter referred to as "Carrier"), and United Technologies Corporation (hereinafter referred to as "UTC"), by and through her undersigned counsel, individually and on behalf of all others similarly situated, and allege the following based on personal knowledge, and information and belief as to all other matters, *inter alia*, the investigation of counsel, which included an analysis of Plaintiff's information, and other publicly available information:

**PREAMBLE**

1.    This class action lawsuit is brought by Plaintiff, Michelle W. Vullings, on her own behalf and on behalf a nationwide class and state sub-classes of current and former owners of the Bryant® Evolution System Plus 90i (hereinafter referred to as the "System") which is a heating, ventilation, and air conditioning ("HVAC") system.

2.     Plaintiff Michelle W. Vullings purchased a Bryant® Evolution System Plus 90i because she was led to believe it was one of the most reliable furnaces available in the United States.

3.     What Vullings, other purchasers of this furnace, and current homeowners with this furnace could not have known is that the Bryant® Evolution System Plus 90i in fact contained defective control boards that led to the malfunction of the system and its failure to operate requiring costly replacements and repairs throughout the limited life of the System.

4.     The control boards had defects, including but not limited to, soldering points that failed prematurely and caused error codes and the shutdown of the system.  Just by way of example:   https://www.diychatroom.com/f17/bryant-plus-90-no-blower-70375/

5.     The units were defectively designed and manufactured with faulty and malfunctioning control boards and were not advertised accurately.

6.     Vullings and many others justifiably relied upon the Defendants' false, misleading and deceptive representations, including advertising, marketing, promotions, sales materials, owner's manual materials, safety materials, express and implied warranties, and press statements and releases that the Defendants provided to its customers, consumers and users of the Bryant® Evolution System Plus 90i.

7.     The Bryant® Evolution System Plus 90i with its defective control boards is a classic example of "Deceptive Trade Practices."

8.      Further, the Defendants have taken no steps to remedy their past bad acts, thus ensuring that the false sense of security deceptively created by the Defendants continues to affect owners of the Bryant® Evolution System Plus 90i.

9.      On information and belief, the Defendants have at all times been aware of the defective control board and their effect on the proper function of the system. Further, the Defendants have knowingly -- both through false advertisement and omission -- represented to the public that the Bryant® Evolution System Plus 90i were of suitable and satisfactory quality.

10.     The Defendants have directly benefited from the false advertisement and defective design of the furnaces. These direct benefits include, inter alia, saving millions of dollars by not supplying adequate control boards and the significant premium paid by owners of the furnaces in justifiable reliance on the Defendants' false, misleading, and deceptive advertising of superior quality.

11.     As a result of the Defendants' unfair and deceptive business practices, as set forth herein, the Bryant® Evolution System Plus 90i have lower market values and are inherently worth less than they would be in the absence of the defective control boards.

12.     Defendants have foisted the cost of repairs and system inefficiency onto not only consumers but also contractors, who, in order to protect the reputations of their businesses, have often been forced to perform repairs without charge to their customers when another control board fails within just weeks or months of replacement. How could a contractor, who has been paid several thousands of dollars to install a brand-new HVAC system only a few weeks or months before,

charge his customer several hundred dollars or thousands of dollars more to repair a manufacturing defect? If he did, his reputation could be ruined.

13.     Moreover, upon information and belief, Defendants have been aware of the defect since the System began to be installed but continued to sell defective boards unabated through their distributors. In fact, even after Defendants knew of the malfunctioning boards, Defendants continued to allow defective boards to be provided to their distributors.

14.     Further, despite their knowledge that the HVAC systems were defective, Defendants' response to the manufacturing defect has been wholly inadequate in that:

(a) Defendants did not notify consumers that the control boards were prone to failure or negatively affect the intended operation of the systems;

(b) Defendants continued to sell defective equipment to contractors and consumers and failed to pull defective equipment off the shelves of their distributors;

(c) Defendants failed to disclose this known defect to consumers or contractors at the time of purchase; and

(d) Defendants refused to either replace the defective systems or provide full compensation for repairs.

15.     Given the nature of the defective control boards, even though some consumers may not have experienced a complete board failure (yet), it is likely that, unbeknownst to consumers, all of the impacted HVAC systems – even those that have not experienced a failure of the control board – cannot provide the energy efficiency

Defendants claim they can achieve due to the failure of the control board to properly control other critical components or properly regulate the stages of the systems.

16. Consumers and contractors should not be required to bear the costs of Defendants' manufacturing defect. Nor should they be required to bear the risk of later, out-of-warranty problems that may arise from the replacement of additional defective control boards.

17. Moreover, even though some affected may not have experienced a complete failure (yet) of the control board, it is substantially likely that almost all of the impacted HVAC systems are not functioning as efficiently as they would have functioned absent the defective control boards. In other words, consumers are not receiving the advertised system efficiency to which they are entitled.

18. Defendants' supposed warranty provides no coverage for labor or additional energy loss. Thus, despite the fact that Defendants knowingly sold defective HVAC systems, which frequently fail within the supposed warranty period or prior to the expected useable life, they are refusing to provide non-defective replacements and/or fully compensate consumers and contractors. Defendants continued to sell defective units even after they specifically identified the defect, and customers unknowingly agreed to a grossly one-sided warranty contract of adhesion, which they had no opportunity to negotiate.

19. Defendants' had been alerted to the faulty control boards very early in the manufacture and installation of the Systems from numerous consumers, contractors, and distributors but continued to sell and distribute the defective

control boards. Just as an example: Source: https://www.diychatroom.com/f17/bryant-plus-90-no-blower-70375/

20.  Plaintiff seeks relief on behalf of consumers and contractors alike to remedy Defendants' violations of the consumer protection statutes, the Magnuson-Moss Warranty Act, breaches of express and implied warranties, negligent misrepresentation and unjust enrichment. Plaintiffs seek to require Defendants to fully compensate consumers for their economic damages and out-of-pocket costs resulting from the defective control boards and cover control boards or related failures that may occur in the future.

21.  The Plaintiff Class and subclasses shall be defined as and shall consist of: All current and former owners of a Bryant Evolution System Plus 90i beginning with the first manufacture and installation of the System up to and including 2018; and all contractors who installed, maintained, received and/or repaired the Bryant Evolution System Plus 90i beginning with the first manufacture and installation of the System up to and including 2018.

**THE PARTIES**

22.  Plaintiff, Michelle W. Vullings, is a citizen of the Commonwealth of Pennsylvania and resides in Collegeville, Pennsylvania. Vullings purchased a new Bryant® Evolution System Plus 90i in or around 2005. Prior to the purchase, Vullings reviewed Bryant brochures that she received from her installer and reviewed Bryant's website. Vullings wanted a very high-efficiency system. The system she purchased was advertised as being a two-stage high-efficiency system. None of the

Bryant documents disclosed the existence of a manufacturing defect. If they had, Vullings would not have purchased the system.

23.     Defendant, Bryant is located at 1423 Selinda Avenue, Shepherdsville, Kentucky 40165. Bryant manufactures HVAC systems and represents itself "as an "experienced" manufacturing in producing "durable heating and cooling systems" whom consumers can "rely on."

24.     Defendant, Carrier Corporation, is headquartered at 7310 West Morris Street, Indianapolis, Indiana 46231. Carrier manufactures HVAC systems and represents itself as to the "world's leader in high-technology heating, air-conditioning and refrigeration solutions" because its "experts provide sustainable solutions, integrating energy-efficient products, building controls, and energy services for residential, commercial, retail, transport and food service customers."

25.     Defendant, United Technologies Corporation, is headquartered at One Carrier Place, Farmington, Connecticut. UTC provides high technology products and services to the building systems and aerospace industries worldwide. UTC manufactures and distributes HVAC systems through its subsidiaries.

**JURISDICTION AND VENUE**

26.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States, and pursuant to 28 U.S.C. § 1332(d) because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) because at least one Plaintiff and Defendants are citizens of different

states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

27.     This Court has personal jurisdiction over Defendants Bryant, Carrier and UTC because Defendants are authorized to conduct business in the Commonwealth of Pennsylvania and throughout the United States, and have sufficient minimum contacts with this Commonwealth and throughout the United States and sufficiently avail themselves of the markets of this Commonwealth through their marketing, sales and advertising therefore is permissible.

28.     Venue in the Eastern District of Pennsylvania is proper pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Plaintiff Vullings is a resident of Pennsylvania and Defendants conduct business throughout the Commonwealth of Pennsylvania.

29.     Accordingly, Defendants have conducted substantial business in this judicial district, and intentionally and purposefully placed the systems into the stream of commerce within the Eastern District of Pennsylvania and throughout the United States of America.

## TOLLING OF STATUTE OF LIMITATIONS

30.     Any applicable statute(s) of limitations have been tolled by Defendants knowing and active concealment and denial of the facts alleged herein. Vullings and the other members of the Class could not possibly have discovered the truth about the Systems since the fact that the control board was defective was concealed within the units.

## FACTUAL ALLEGATIONS

31.  Plaintiffs hereby incorporate by reference each and every allegation in this Complaint as if set forth fully herein at length.

32.  In or around 2005, Michelle W. Vullings purchased a Bryant® Evolution System Plus 90i, designed, manufactured, sold, marketed and advertised by Defendants.

33.  At the time of purchase the subject System had a life expectancy of at least twenty (20) years.

34.  However, the System is predisposed to premature performance degradation and/or complete and total failure within the express and/or implied warranty period caused by defective design and manufacture including but not limited to the use of a sub-standard faulty control board.

35.  During her only twelve seasons of use of the system, Vullings has had to have the control board replaced three times, at a cost of approximately $900 - $1,000 each time beginning as early as a few years from purchase.

36.  Each time the defective control board failed and had to be replaced, Vullings' licensed HVAC repairmen contacted the Defendants, their distributors, and/or their representative technicians, notified them of the malfunctioning control board, informed them of the repeated failures, and ordered another control board.  On more than one of these occasions, the distributor and/or technician acknowledged the problems with the failing control boards and their repeated replacements.

37.  Vullings was always held responsible for the cost of the defective control boards, the time spent by the licensed HVAC repairman to diagnose the problem and speak

with the technician and/or distributor on the telephone, and the labor to install another control board.

38.    As a further consequence of the defective control boards, Vullings' system often failed to change from stage one to stage two during operation resulting in damages of exorbitant energy costs or failed completely resulting in burdensome repair costs.

39.    During the substandard and short life span of the System, Vullings has been damaged by countless hours and days of inadequate cooling causing long periods of discomfort in her home.

40.    Also, during the ownership of the System, Vullings has had to spend thousands of dollars replacing duct work, adding insulation, and testing for other potential System deficiencies all while the defective control boards continued to malfunction and be the root cause of the flawed and inefficient System.

41.    In early 2018, Vullings was again advised that the control board was not working properly and had failed.

42.    A representative of Defendant Bryant inspected Vullings' System and stated that the System needed to be replaced.

43.    In addition to the inadequate life of the System, Plaintiff has suffered financial harm from the excessive control board replacements and the installation of a new heater that Plaintiff has had performed.

44.    Throughout the period that the Bryant® Evolution System Plus 90i was manufactured, sold, marketed and advertised by Defendants, control boards were an industry standard contained in these systems.

45.   The general public recognizes this brand of System as defined, advertised and promoted by Defendants to represent that such Systems are more reliable than other heaters.

46.   Defendants have taken no steps to remedy the failure to include satisfactory control boards, or to correct its false, misleading and deceptive advertising that represented to the public that the Systems were reliable and fit for the purpose of heating and cooling one's home.

## CLASS ALLEGATIONS

47.   Plaintiffs hereby incorporate by reference each and every allegation in this Complaint as if set forth fully herein at length.

48.   Defendants have been notified on numerous occasions by Plaintiffs of their breach of express warranties and breach of implied warranties of merchantability by Plaintiffs as to the defective control boards and the malfunctioning Systems.

49.   Michelle W. Vullings brings this action as a class action pursuant to Fed.R.Civ.P. 23(b)(3) on behalf of herself and all similarly situated individuals. The Class on behalf of which she brings the action shall be defined as:  All persons and entities who purchased, owned, installed, and/or repaired an Evolution System 90i Plus HVAC system manufactured by Defendants from the Systems initial manufacture and/or installation up to and including 2018 utilizing the control board(s) installed in the Evolution System 90i Plus and all persons and entities that have not been fully reimbursed for parts, materials or labor expended in diagnosing, servicing and/or replacing the control board(s).

50.   For Plaintiffs' claims under the Magnuson-Moss Act, 15 U.S.C. §§ 2301-2312,

Plaintiffs seek to certify the following nationwide class (the "Nationwide Class"):

**<u>Nationwide Class</u>**
All persons and entities who purchased, owned, installed, and/or repaired an Evolution System 90i Plus HVAC system manufactured by Defendants from the Systems initial manufacture and/or installation up to and including 2018 utilizing the control board(s) installed in the Evolution System 90i Plus and all persons and entities that have not been fully reimbursed for parts, materials or labor expended in diagnosing, servicing and/or replacing the control board(s).

51.   In addition to Plaintiffs' request for a nationwide class under federal law, Plaintiffs

seek to certify subclasses for their common law and state statutory claims under

Pennsylvania law ("the Pennsylvania Sub-Class") and other common law and state

statutory claims to be discovered (collectively with the Nationwide Class, the

"Class").

52.   Plaintiffs may seek to certify additional subclasses and reserve the right to modify

the above class definitions prior to seeking certification.

53.   Excluded from the proposed Class are the following individuals and/or entities: the

Court, all Court personnel involved in the handling of this case, as well as their

immediate family members; Defendants and their subsidiaries, affiliates, officers

and directors, current or former employees, and any entity in which Defendants

have a controlling interest; all individuals who timely elect to be excluded from this

proceeding using the correct protocol for opting out; all governments, including,

but not limited to, their departments, agencies, divisions, bureaus, boards, sections,

groups, councils and/or subdivisions.

54.   Upon information and belief, the Class comprises thousands of persons throughout

the United States and is so numerous that joinder of all members is impracticable.

While the exact number of individuals and entities that purchased Defendants' Systems can only be ascertained through discovery, the identity of Class members is readily determinable from Defendants' records.

55.    There are questions of law and fact common to all Class members, which predominate over any individual issues, including but not limited to:

a.    Whether and when Defendants knew or should have known that their manufacturing process and/or use of malfunctioning and substandard control boards lead to the failure of the HVAC equipment;

b.    Whether Defendants knowingly sold HVAC equipment that included malfunctioning and substandard control boards;

c.    Whether Defendants' Systems were sold with a manufacturing defect;

d.    Whether a reasonable consumer would consider the defect or its consequences to be material;

e.    Whether Defendants concealed and/or failed to disclose the defective condition of the control boards to consumers;

f.    Whether Defendants breached express and implied warranties;

g.    Whether Defendants were unjustly enriched;

h.    Whether the System was falsely and deceptively marketed and advertised;

i.    Whether the System was defectively designed by failing to have adequate control boards;

j.    Whether it was false and deceptive for Defendants to advertise the System as being reliable;

k.  Whether Defendants failed to warn the public that the Systems are defective;

l.  The effect on the value of heaters because of the issues described herein;

m.  Defendants level of culpability because of the issues described herein;

n.  Whether because of the issues described herein Defendants have violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;

o.  Whether Defendants have a responsibility to repair the heaters.

56.  The claims of Michelle Vullings are typical of the class as a whole. Plaintiffs and all members of the class have been similarly affected by Defendants' common course of conduct. As with all members of the Class, Vullings purchased the Systems during the time from its introduction into the market up until and including 2018. None of the Systems contained adequate control boards and all of them were similarly designed, manufactured, advertised, marketed, promoted and sold by Defendants.

57.  Vullings will fairly and adequately assert and represent the interests of the Class. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class. Vullings' interests are not antagonistic with those of the Class and in no way conflict. Vullings has retained experienced counsel who will adequately represent the Class interests. Vullings has the ability and motivation to assist in the prosecution of the Class Action and like her counsel has the financial resources and is otherwise able to vigorously prosecute this litigation.

58.  Vullings' claims are identical to the claims of the entire class, and also arise from Defendants' uniform conduct.

59.     The maintenance of this action as a class action is superior to all other available methods of adjudication in achieving a fair and efficient adjudication of the controversy in this matter because:

    a.  The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class;

    b.  The action is manageable as a class action because notice of the pendency of the action can readily be furnished to all prospective class members because Defendants knew their identities;

    c.  In view of the complexity of the issues and the expenses of litigation, the separate claims of the individual class members are insufficient in amount to support the prosecution of the individual class members' separate claims because such members would lack the economic incentive to prosecute such actions;

    d.  It is probable that the amount that will be recovered by individual members collectively will be large enough in relation to the expense and effort of administering the action as a class;

    e.  The Class members have a common and undivided interest to ensure that owners of the heaters do not rely on a defective heater for themselves or their family.

## COUNT I
### Violations of Magnuson-Moss Warranty Act
### 15 U.S.C. §2301, *et. seq*.

60.     Plaintiffs hereby incorporate by reference each and every allegation in this Complaint as if set forth fully herein at length.

61.     The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(d)(1), provides a claim for relief for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

62.     As demonstrated above, Defendants have failed to comply with the terms of their express and implied warranties on the Systems that they manufactured, advertised and sold through their distribution chain.

63.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a)-(d).

64.     The subject System is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

65.     Defendants are each a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4) and (5).

66.     Plaintiffs and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3), because they are persons entitled under applicable state law to enforce against the warrantor the obligation of its express and implied warranties.

67.     Defendants provided Plaintiff and Class members with a written warranty within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6), and an implied warranty for fitness for a particular purpose covered under 15 U.S.C. § 2301(7),

which warranties Defendants cannot disclaim under the Magnuson-Moss Act, when they fail to provide merchantable goods.

68.     Defendant has failed to conform to the implied warranty of the subject System, namely, Defendant impliedly warranted that the Systems were merchantable and fit for their intended use and particular purpose.

69.     Defendant breached its contractual obligations and the aforesaid warranties by designing, manufacturing and selling Systems that were faulty and defective, of inferior quality and workmanship, and not fit for their intended use and particular purpose.

70.     Defendants breached these specific warranties as described in more detail above, and also breached then generally by: (a) manufacturing Defendants HVAC systems that are defective in design, materials and workmanship and all likely to permanently fail; (b) selling defective the Systems not in merchantable condition, which present an unreasonable risk of failure and are unfit for the ordinary purpose for which HVAC units are used; (c) providing the Systems that were defective at the time they were purchased; (d) refusing to replace defective control boards as provided by the warranties; (e) refusing to repair or replace free of charge the defective HVAC systems or any of their component parts; (f) forcing consumers to pay for out-of-pocket costs for diagnostics, labor, repair and replacement parts; and (g) not curing the defect once it was known and identified.

71.     Defendant has therefore violated the Magnuson-Moss Warranty Act, thereby entitling Plaintiffs to: revoke acceptance of the heaters; receive a full refund of the purchase price of the television plus all out of pocket expenses related to the heater;

recover incidental, consequential, and loss of use damages; and compensation for their reasonable legal fees and litigation costs incurred in prosecuting this matter.

WHEREFORE, Plaintiffs prays this Honorable Court enter judgment in their favor and against Defendant and Order an award of compensatory damages; actual damages; treble damages; an award of reasonable attorney's fees and expenses and cost of suit; and such additional relief as is deemed just and proper, or that the interest of justice may require.

## COUNT II
**Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**(On behalf of the Nationwide Class, or in the Alternative, a Pennsylvania Class)**

72.   Plaintiffs hereby incorporate by reference each and every allegation in this Complaint as if set forth fully herein at length.

73.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") protects consumers against "unfair or deceptive acts or practices" in connection with the sale or advertisement of products, including automobiles. 73 Pa. C.S.A. § 201·-1, *et seq*.

74.   Michelle Vullings and the other Class members purchased the Systems for personal, family or household use.

75.   Defendants engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated the UTPCPL. Specifically, Defendants made false, deceptive and/or misleading representations and/or omissions that the heaters were reliable.

76.   Defendants defined, advertised and promoted the Systems as being reliable and have extensively leveraged this public image of reliability and the purported

reliability of their Systems to induce consumers to purchase the Systems at a substantial premium.

77.   More specifically, Defendants made false, deceptive and/or misleading representations and/or omissions to the public regarding the heater's reliability

78.   Defendants also used unfair methods of competition and more specifically engaged in unfair or deceptive acts or practices as prohibited under the UTPCPL as follows (as enumerated in the Code, at 73 Pa. C.S.A. § 201-2):

    (v)   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or qualities that they do not have [ ...];

    (ix)   Advertising goods or services with intent not to sell them as advertised;

    (xiv)   Failing to comply with the terms of any written guarantee or warranty given to the buyer [ ...];

    (xxi)   Engaging in other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

79.   Defendants engaged in at least the following specific deceptive trade practices:

    a.   Failing to disclose that the control board of the System(s) were defective;

    b.   Falsely, misleadingly and/or deceptively representing that the System(s) had the characteristic of being reliable.

    c.   Failing to correct its design, build and manufacture of the heaters;

    d.   Failing to correct its advertising, marketing and promotion of the heaters;

    e.   Doing all of the above in order to secure the sale of the heaters.

80.     As a direct and proximate result of Defendants' false, deceptive and/or misleading representations and/ or omissions, Michelle W. Vullings, and the other Class members have suffered an ascertainable loss. In addition to direct monetary loss, Vullings and the Class members have suffered an ascertainable loss by receiving less than was promised.

81.     Defendants intended that Michelle W. Vullings and the other Class members rely on Defendants' representations and omissions so that they would purchase the heaters.

82.     A causal relationship exists between Defendants' unlawful conduct and the ascertainable loss suffered by Michelle W. Vullings and the other Class members. Had Defendants accurately represented its defective product, consumers would not have purchased the System(s) or they would have paid significantly less for the System(s) had they decided to purchase them.

WHEREFORE, Michelle W. Vullings and the other Class Members demand judgment against Defendants for: compensatory damages; punitive damages; attorneys' fees; interest; costs of suit; injunctive relief; and, any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.


**COUNT III**
**Unjust Enrichment**
**(On behalf of the Nationwide Class, or in the Alternative, a Pennsylvania Class)**

83.     Plaintiffs hereby incorporate by reference each and every allegation in this Complaint as if set forth fully herein at length.

84.     Plaintiffs bring this claim on behalf of themselves and the State Sub-Classes.

85.   Michelle W. Vullings and the other Class members conferred a tangible economic benefit to Defendants by purchasing the heaters; had it been known at the time this benefit was conferred that the System(s) were defective and not as advertised, Vullings and the other Class members would have expected remuneration from Defendants.

86.   The tangible economic benefits that Michelle W. Vullings and the other Class members conferred to Defendants include among other things: the purchase price of the System(s), including the substantial premiums that Defendants is able to command in price because of their reputation for such things as producing reliable heaters; and the revenue conferred to Defendants in maintenance and repair costs associated with the fact that the defective heaters were used.

87.   As a direct and proximate result of Defendants' false, deceptive and/or misleading representations and/or omissions regarding the System(s), Defendants have realized profits because Michelle W. Vullings and the other class members were induced to purchase the System(s). Additionally, Defendants have retained millions of dollars that it did not spend to manufacture and produce adequate control boards.

88.   Defendants were and continue to be unjustly enriched at the expense of Michelle W. Vullings and the other Class members.

89.   Under these circumstances, Defendants would be unjustly enriched at Michelle W. Vullings and the other Class members' expense unless Defendants are disgorged of the benefits it has inequitably gained.

WHEREFORE, Michelle W. Vullings and the other Class Members demand judgment against Defendants for: compensatory damages; punitive damages; attorneys'

fees; interest; costs of suit; injunctive relief; and, any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.

## COUNT IV
### Breach of Express Warranty
### (On behalf of the Nationwide Class, or in the Alternative, a Pennsylvania Class)

90.   Plaintiffs hereby incorporate by reference each and every allegation in this Complaint as if set forth fully herein at length.

91.   Plaintiffs bring this claim on behalf of themselves and the State Sub-Classes.

92.   When Plaintiffs and the State Sub-Classes' members purchased their Systems from Defendants and/or their authorized dealers, a contract was formed.

93.   Defendants' Limited Warranty, as well as advertisements, and any other marketing materials formed the basis of the bargain that was reached between Defendants and the State Sub-Classes. The express warranty provided with all Defendants' Systems provided that if a part fails due to defect during the applicable warranty period Defendants will provide a new or remanufactured part, at the Defendants' option, to replace the failed defective part at no charge for the part.

94.   Defendants breached the contract with Plaintiff and the State Sub-Classes by failing to replace defective parts. Defendants have not replaced failed control boards or replaced Plaintiffs and the State Sub-Classes' Systems.

95.   Defendants expressly warranted that the heaters were of good quality, and free of defects.

96.   Defendants breached this warranty by selling to Michelle W. Vullings and the other Class members the heaters, which did not contain the essential, industry-standard feature of satisfactory control boards and heat exchangers.

97.   Moreover, Defendants' false, deceptive and/ or misleading representations and/or omissions explicitly and implicitly told Michelle W. Vullings and the other Class members that the heaters were of satisfactory and even superior quality.

98.   Defendants' warranty breach has caused Michelle W. Vullings and the other Class members significant damages.

99.   Any attempt by Defendants to disclaim or limit these express warranties is unconscionable and unenforceable under the present circumstances. Defendants' warranty limitation cannot be enforced because Defendants knowingly sold a defective product without informing the public about the defect.

100.   The time limits contained in Defendants' warranty are also unconscionable and inadequate to protect Michelle W. Vullings and the other members of the Class. Among other things, Vullings and the other Class members had no meaningful choice in negotiating these limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Vullings and the other Class members, and Defendants was aware or should have been at the time of sale that the other Class Vehicles were not as advertised and did not conform to even industry-standard expectations.

101.   Michelle W. Vullings and the other Class members have either complied with all the obligations under the warranty or are excused from said performance because of Defendants' herein described conduct.

WHEREFORE, Michelle W. Vullings and the other Class Members demand judgment against Defendants for: compensatory damages; punitive damages; attorneys' fees; interest; costs of suit; injunctive relief; and, any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.

## COUNT V
### Breach of the Implied Warranty of Merchantability
**(On behalf of the Nationwide Class, or in the Alternative, a Pennsylvania Class)**

102.　Plaintiffs hereby incorporate by reference each and every allegation in this Complaint as if set forth fully herein at length.

103.　Defendants impliedly warranted that the Systems were of marketable quality.

104.　Defendants breached the implied warranty of merchantability because the Systems were not of a merchantable quality owing to their falsely-represented and undisclosed issues owing to the absence of adequate control boards.

105.　Michelle W. Vullings and the other Class members were injured and are entitled to damages because Defendants breached the implied warranty of merchantability.

106.　Defendants' attempts to disclaim or limit the implied warranty of merchantability is unconscionable and cannot be enforced. Defendants' warranty limitation is unenforceable because Defendants knowingly sold a defective product without informing consumers about the defect.

107.　The time limits contained in Defendants' warranty are also unconscionable and inadequate to protect Michelle W. Vullings and the other members of the Class. Among other things, Vullings and the Class members had no meaningful choice in

negotiating these limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Vullings and the Class members, and Defendants were aware or should have been at the time of sale that the Systems were not as advertised and did not conform to even industry-standard expectations.

108.   Michelle W. Vullings and the other Class members have either complied with all the obligations under the warranty or are excused from said performance because of Defendants' herein described conduct.

WHEREFORE, Michelle W. Vullings and the other Class Members demand judgment against Defendants for: compensatory damages; punitive damages; attorneys' fees; interest; costs of suit; injunctive relief; and, any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.

## <u>COUNT VI</u>
### Negligent Misrepresentation
**(On behalf of the Nationwide Class, or in the Alternative, a Pennsylvania Class)**

109.   Plaintiffs hereby incorporate by reference each and every allegation in this Complaint as if set forth fully herein at length.

110.   Plaintiff Vullings brings this claim on behalf of herself and the Pennsylvania Sub-Class.

111.   As a manufacturer of a product sold to consumers, Defendants have and continue to have a duty to disclose to Plaintiffs and their respective State Sub-Classes the actual quality of Defendants' Systems and the defect alleged herein.

112.    Defendants negligently and/or recklessly misrepresented, omitted and concealed from Plaintiff and any State Sub-Classes material facts relating to the quality of Defendants' System and the Systems' capability of performing as advertised.

113.    Defendants negligently provided Michelle W. Vullings and the other class members with false information. This includes: Defendants' deceptive and/ or misleading representations and/or omissions regarding the presence of adequate control boards in the System; and Defendants' many numerous affirmative representations about the quality of the Systems, which, *inter alia*, were intended to give a reasonable consumer the false belief that the Systems were of equal or superior quality to other available heaters.

114.    The misrepresentations, omissions and concealments complained of herein were negligently and recklessly made to potential purchasers and the general public on a uniform and market-wide basis. As a direct and proximate result of these misrepresentations, omissions and concealments, Plaintiff and any State Sub-Class have been damaged, as alleged herein.

115.    Plaintiff and any State Sub-Classes would not have purchased the Systems had Defendants disclosed the defect, which was highly material.

116.    As alleged above, in deciding whether to spend thousands and pay a premium price for Defendants' new Systems, Plaintiffs reviewed and relied upon the statements contained in Defendants' marketing and warranty materials. Further, Defendants failed to disclose the existence of the defect in any marketing material or other publicly available disclosures. Had Defendant disclosed the defect, Plaintiffs would not have purchased the defective Systems.

117.   Based on such reliance, Plaintiff and any State Sub-Classes purchased Defendants' Systems and, as a result, suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.

WHEREFORE, Michelle W. Vullings and the other Class Members demand judgment against Defendants for: compensatory damages; punitive damages; attorneys' fees; interest; costs of suit; injunctive relief; and, any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.

## COUNT VII
### Fraud
**(On behalf of the Nationwide Class, or in the Alternative, a Pennsylvania Class)**

118.   Plaintiffs hereby incorporate by reference each and every allegation in this Complaint as if set forth fully herein at length.

119.   Plaintiff brings this claim on behalf of herself and the State Sub-Classes.

120.   Defendants made false misrepresentations and omissions concerning a material fact. This includes the fact that Defendants did not fully and truthfully disclose to its customers that it had installed defective industry-standard features in the heaters. Further, Defendants made material false misrepresentations and omissions to the effect that the heaters were of adequate or superior quality compared to other available heaters

121.   Defendants further affirmatively misrepresented to Plaintiff and the State Sub-Classes, including in standard and uniform material provided with the purchase of each System, that the Systems would perform and operate properly under normal usage and were capable of performing as advertised.

122. Defendants knew and recklessly disregarded that these representations and omissions were false and misleading.

123. Defendants' Systems purchased by Plaintiff and the State Sub-Classes were, in fact, defective because of the manufacturing defect alleged herein.

124. Defendants had a duty to disclose that their Systems were defective, inefficient and unreliable and essentially rendered inoperative due to the manufacturing defect, and that the limited warranty provided was grossly insufficient to repair the defect.

125. The aforementioned concealment was material because if it had been disclosed, Plaintiff and the State Sub-Classes would not have bought the defective Systems, or would have not bought them at the premium price paid.

126. Plaintiff relied on Defendants' omissions and affirmative misrepresentations about the efficiency, reliability and quality of the Systems in purchasing their systems.

127. As a result of the herein described materially false misrepresentations and omissions made by Defendants, Michelle W. Vullings and the other Class members were fraudulently induced to purchase or lease the Systems.

128. These omissions and statements were made knowingly by Defendants, with the intent that Michelle W. Vullings and the other class members rely upon them.

129. Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard fort he rights of Plaintiff and the State Sub-Classes. Plaintiff and the State Sub-Classes are therefore entitled to an award of punitive damages.

130.   Michelle W. Vullings and the other class members reasonably relied upon the omissions and statements and thereby have been injured in an amount to be proven at trial.

WHEREFORE, Michelle W. Vullings and the other Class Members demand judgment against Defendants for: compensatory damages; punitive damages; attorneys' fees; interest; costs of suit; injunctive relief; and, any other appropriate legal or equitable relief as deemed fair and just by the Court under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a) Determining that this action is a proper class action, certifying Plaintiff as Class Representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as Class Counsel;

(b) Ordering injunctive relief;

(c) Awarding of all actual, general, special, incidental, statutory, treble or multiple, punitive and consequential damages to which Plaintiff and Class members are entitled;

(d) Awarding of pre-judgment and post-judgment interest on such monetary relief;

(e) Awarding of restitution in an amount according to proof;

(f) Awarding Plaintiff and Class members their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(g) Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

Respectfully submitted,

VULLINGS LAW GROUP, LLC

Dated: August 6, 2018

*/s/ Brent F. Vullings*
Brent F. Vullings, Esq.
Attorney ID No.: 92344
3953 Ridge Pike Suite 102
Collegeville, PA 19426
T: 610-489-6060
F: 610-489-1997

*Attorney for Plaintiff*
*Michelle W. Vullings*